Andrias, J.,
dissents in a memorandum as follows: The majority affirms the order denying plaintiff’s motion for summary judgment declaring that it had no obligation to defend or *531 indemnify defendant BCS in the underlying personal injury action on the ground that plaintiff did not establish, as a matter of law, that the underlying claim did not arise out of work performed by BCS that fell within the classifications covered by the commercial lines insurance policy at issue. Because I find that plaintiff made a prima facie showing of its entitlement to summary judgment and that the opponents of the motion failed to offer a scintilla of evidence demonstrating that the underlying accident could have been caused by covered work performed by BCS, I dissent and would grant the motion.
The policy issued to BCS by plaintiff includes a “Classification Limitation Endorsement,” which limits coverage to those classification codes listed in the policy. The policy also contains an “Independent Contractors Exclusion,” which excludes coverage for claims “arising out of operations performed for any insured by independent contractors or acts or omissions of any insured in connection with his general supervision of such operations.”
In 2007, defendant owners hired BCS to serve as the general contractor for a construction project adding a second and third story to the subject premises. BCS filed all of the permits for the project and hired several subcontractors. Although there is no written contract, BCS’s proposal indicates that the job encompassed, among other things, plumbing, electrical, structural steel, masonry, and roofing work, and the installation of an elevator, none of which fall within the classifications covered by the policy.
On or about June 10, 2008, the owners fired BCS for allegedly performing inferior work. BCS sought to withdraw the permits it obtained for the project, and advised the Department of Buildings of its request to “withdraw as General Contractor of Record” (emphasis added).
Two years later, on March 13, 2010, defendant Farley, the plaintiff in the underlying action, was injured when, as the underlying complaint alleges, “a portion of the adjacent building under construction collapsed striking [his] vehicle as did other debris that fell due to the partial collapse of the building under construction, and as [he] was attempting to exit his vehicle.” Among other things, Farley alleges that the owners of the building and BCS were negligent in that they “failed to ensure the jobsite was free from falling objects; failed to provide safety nets, catchalls, sidewalk bridge and other safety devices to prevent the general public from being struck by falling objects; failed to ensure that the building was properly constructed and/or maintained, said failure leading to the partial collapse of the building.”
*532 Plaintiff established prima facie its entitlement to a declaration that it had no duty to defend or indemnify BCS with respect to the underlying claim, based on the clear and unambiguous language of the Classification Limitation Endorsement and Independent Contractors Exclusion.
Under the Classification Limitation Endorsement, the policy limits liability protection to those hazards designated in the policy declarations. The policy describes the covered classifications as: “91341—Carpentry-Interior”; “98305—Painting-Interior-Structures”; “92388—Dry wall or wallboard Install”; “98449— Plastering or stucco work”; and “99746—Tile, Stone-interior construction.” The Independent Contractors Exclusion bars coverage for liability arising out of the work performed by a subcontractor.
In his complaint in the underlying personal injury suit, Farley alleges that “BCS . . . was in the business of performing general contracting in construction management and/or masonry work and performed said work at the aforesaid premises” (emphasis added). BCS was identified as the general contractor in the work permits issued by the Department of Buildings, and requested that it be allowed to withdraw as general contractor after it was fired, two years before Farley was injured by the partial building collapse.
Plaintiff also submitted the affidavit of an investigator who took a signed statement from Devi Leonard, an owner of the premises. In her statement, Leonard confirmed that BCS was hired as general contractor and that BCS hired Economy Iron Works as a steel subcontractor and other subcontractors whom Leonard did not know. Leonard stated that “the work was inferior and the columns placed were improper.” She also stated that the roof work “was done improperly” and that BCS should have put up a sidewalk bridge. The investigator stated that after interviewing Leonard, he accurately transcribed Leonard’s statement, which Leonard reviewed and signed (see Chubb & Son v Riverside Tower Parking Corp., 267 AD2d 128 [1st Dept 1999]). No objection to the admissibility of Leonard’s statement was raised below.
BCS’s president, Eusebio Banks, also signed a statement, attached to the notice of appearance and verified answer he filed on behalf of BCS. In the statement, Banks indicated that BCS hired subcontractors for the frame steel work, scaffolds, general contracting, plumbing work, electrical work, and metal stair work. BCS also hired laborers, directly supervised the concrete block work, and served as a contract administrator for fully insured subcontractors while it was on the job. BCS’s invoice to *533 the owners requested payment for this electrical, plumbing, masonry and construction work.
These submissions demonstrate that coverage is precluded by the policy because BCS acted as the general contractor, and its liability, if any, is premised on either non-covered work or work performed by its subcontractors (see Ruiz v State Wide Insulation & Constr. Corp., 269 AD2d 518, 519 [2d Dept 2000] [where insured’s work was classified as “painting” and a fire broke out due to the insured’s repairing a roof, the Classification Limitation Endorsement was applicable and precluded coverage]). Indeed, at no point did Banks state that the wall collapse related to covered work or work that BCS performed itself. Rather, Banks maintained that Department of Buildings records reflected a December 3, 2009 complaint that “CONSTRUCTION WORK IS BEING DONE ON THE ROOF WHICH HAS CAUSE C[R]ACKS IN CALLER WALL/ALONG WITH VIBRATION,” and that the concrete block wall fell because of an alteration of the original structural plan and the negligence of the new general contractor and owner in performing demolition work.
In opposition, defendants failed to produce any admissible evidence sufficient to raise a material issue of fact whether BCS was directly performing operations that could be fairly characterized as included under the policy. Any suggestion that the activity leading to the structural collapse bore a reasonable relationship to the classifications for which coverage was purchased, i.e., carpentry, painting, drywall, plastering, and interior tile work, is purely speculative (see Atlantic Cas. Ins. Co. v C.A.L. Constr. Corp., 2008 WL 2946060, *5, 2008 US Dist LEXIS 58815, *14-15 [ED NY 2008] [“rooftop renovations, exterior brick work, the construction of a driveway, and the construction of an entrance ramp exceed the scope of what can be classified as interior carpentry and dry wall work”]; see also Mount Vernon Fire Ins. Co. v Chios Constr. Corp., 1996 WL 15668, *2, 1996 US Dist LEXIS 414, *7 [SD NY 1996] [coverage precluded by a classification limitation for “Carpentry-Interior” because, although carpentry tasks were being performed on site, the work at issue was not “remotely related to interior carpentry”]).
Defendants also failed to raise a material issue of fact whether the policy’s Independent Contractors Exclusion barred coverage for all liability arising out of work performed for BCS by one its subcontractors. The record demonstrates that BCS engaged various independent contractors to build the second- and third-story additions from which the debris ultimately injuring Farley emanated. Plaintiff did not produce any evidence demonstrating *534 that BCS was acting as anything other than a general contractor, which was fired two years before Farley’s accident, or that it performed any covered work itself that was a proximate cause of the accident (see Ruiz, 269 AD2d at 519).
The summary judgment motion was not premature. Defendants “have advanced no nonspeculative basis to believe that additional discovery might yield evidence warranting a different disposition” (Rosario v New York City Tr. Auth., 8 AD3d 147, 148 [1st Dept 2004]). While the cause of the wall collapse has not been attested to by experts, there is nothing in the record that remotely suggests that the building collapse was related to interior carpentry, painting, drywall, plastering and tile work performed by BCS. Significantly, defendants are BCS and the owners, who presumably have knowledge of the facts. While there has been no expert testimony, the action was commenced in June 2011, and the motion for summary judgment was not served until July 2012. Thus, defendants had ample time to investigate.